Filed 1/28/25  Gupta v. LegalZoom.com CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANURAG GUPTA, | B334231 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 23GDCV00761) |
| v. | |
| LEGALZOOM.COM, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ralph C. Hofer, Judge.  Reversed and remanded with directions.

Perkins Coie, Steven G. Williamson, Eric B. Wolff, Gregory F. Miller, and Bruce C. Lee for Defendant and Appellant.

Chang Employment Law and Nadine Chang for Plaintiff and Respondent.

_____

Defendant LegalZoom.com, Inc. (LegalZoom) appeals from the trial court's order denying its motion to compel arbitration in this employment-related action filed by its former employee, plaintiff Anurag Gupta. LegalZoom contends the trial court erred in concluding the arbitration agreement Gupta signed was unenforceable due to unconscionability. For the reasons explained below, we agree with LegalZoom and reverse the order.

## BACKGROUND

### A. Gupta Accepts an Offer For an Executive Level Position at LegalZoom and Signs an Arbitration Agreement as Part of His Employment Agreement

Gupta alleged in his complaint that in or around June 2020, he was the Head of Corporate Financial Planning and Analysis (FP&A) at Walmart eCommerce, and he had unvested stock options with his employer valued at $300,000. At that time, LegalZoom recruited him to apply to be its Head of FP&A, a Senior Director position. His first interview on or around July 2, 2020 was with LegalZoom's Vice President of Finance and Corporate Planning, and his final interview was with the Chief Executive Officer.

In a declaration he submitted in support of his opposition to LegalZoom's motion to compel arbitration, Gupta described the recruitment process for the executive level position at LegalZoom, and the circumstances under which he signed the arbitration agreement, as follows.

During a nearly two-month interview process, Gupta learned that "the priority for the role was transforming LegalZoom's financial reporting and regulatory team and bona fides to that of a public company in anticipation of a very near-

2

future Initial Public Offering (IPO)."  The interviewers asked him if he was interviewing for other positions elsewhere, and he said that he was.  They also inquired about the value of his equity in his then-current employer, and he provided the figure.

On August 28, 2020, LegalZoom sent Gupta a two-page written offer by e-mail.  The terms of the offer included an annual salary of $250,000, eligibility for an annual 35 percent discretionary bonus, a recommendation to the Board of Directors that he receive an award of $300,000 in liquidity event restricted stock units, benefits, and accrual of paid vacation days.  The offer was "contingent upon successful completion of a background check and professional references."  As stated in the offer, the projected start date for Gupta's at-will employment was September 21, 2020.  The offer letter further provided:

"As a condition of your employment with the Company, you will be required to sign a standard employment agreement, which includes confidentiality and non-solicitation provisions.  Additionally, you will be required to furnish and will continue to furnish the Company all necessary documentation that will satisfy the requirements of the Immigration Reform and Control Act of 1986.

"By signing this letter, you acknowledge that the terms described in this letter sets [*sic*] forth the entire understanding between you and the Company; there are no terms, conditions, representations, warranties or covenants other than those contained herein.  No term or provision of this letter may be amended, waived, released, discharged or modified except in writing, signed by you and an authorized officer of Company.

"Please acknowledge your intent of acceptance of this offer of employment on the terms indicated by signing a copy of this

3

letter and returning it to me [the Interim Chief People Officer] as soon as possible. <u>This offer shall remain open for three (3) business days from the date of this letter, unless otherwise agreed to in writing by an authorized officer of the Company.</u>"

Gupta signed the offer the same day he received it, August 28, 2020. He stated in his declaration that he immediately "withdrew from consideration from other jobs for which [he] was interviewing and in serious contention to be hired, including another late-stage, IPO-imminent start-up."

As reflected in an e-mail exchange attached to Gupta's declaration, on September 1, 2020, Gupta contacted his LegalZoom recruiter to request a fully executed copy of the offer letter. The recruiter responded the same day, indicating he would follow up on that, and informing Gupta that he had passed the background check. The recruiter further explained that he was waiting for the legal department to send him Gupta's employment agreement, and he would forward it to Gupta as soon as he received it. A week later, on September 8, 2020, Gupta e-mailed the recruiter again, inquiring about "[a]ny updates on [his] offer letter and next steps in terms of onboarding and orientation." The recruiter responded the same day, providing information about Gupta's orientation scheduled for September 21, and stating that he was about to forward the employment agreement to Gupta through the DocuSign program. The recruiter added, "With this document there will be nothing further needed on your end."

On September 8, 2020, the same day as the latter e-mail exchange, the LegalZoom recruiter sent Gupta a copy of LegalZoom's standard employment agreement via DocuSign for Gupta to sign and initial electronically where indicated

4

throughout the document.  Gupta reviewed the employment agreement the same day he received it.  The agreement is 10 pages, plus 12 pages of exhibits labeled A through E.

Gupta electronically signed the last page of a seven-page arbitration agreement, which was attached to the employment agreement as Exhibit C.  He also signed the next page, titled "**PAGA OPT-OUT**," indicating he had chosen to opt out of arbitration for any claims he might bring against LegalZoom under the California Private Attorneys General Act (PAGA; Lab. Code, § 2698 et seq.).  We describe below, in connection with our discussion of the motion to compel arbitration, the specific terms of the arbitration agreement that Gupta contends are substantively unconscionable.

Exhibit D to the employment agreement, concerning the employee's "ongoing obligations" upon termination of employment, included a signature line but no DocuSign prompt for signature.  On September 8, 2020, the date he received and reviewed the employment agreement, Gupta e-mailed the LegalZoom recruiter to ask if it was "ok" that he did not sign Exhibit D because there was no DocuSign prompt.  He also asked in the e-mail if he could share the employment agreement with his third-party recruiters or if anything in the agreement was confidential or proprietary.  The LegalZoom recruiter answered the e-mail the same day, informing Gupta that no signature was required on Exhibit D unless Gupta left LegalZoom, and stating that he would check with the legal department about sharing the employment agreement with Gupta's third-party recruiters.

On September 8, 2020, Gupta placed his electronic signature and initials on all the DocuSign prompts in the employment agreement.  He started his work at LegalZoom on

September 21, 2020.  On or around April 16, 2021, about two months before LegalZoom's IPO, Gupta's employment was terminated due to a company restructuring.

**B.    Gupta Files This Action and LegalZoom Moves to Compel Arbitration**

**1.    *The complaint***

In June 2023, Gupta filed this action, asserting the following causes of action against LegalZoom: (1) national origin, race, and ancestry discrimination, (2) wrongful termination in violation of public policy, (3) breach of the implied covenant of good faith and fair dealing, (4) breach of implied-in-fact contract, (5) intentional misrepresentation, (6) negligent misrepresentation, (7) negligent hiring, supervision, and retention, (8) unjust enrichment, and (9) violation of Business and Professions Code section 17200.  In the complaint, Gupta included a demand for jury trial.

**2.    *Motion to compel arbitration***

LegalZoom moved to compel arbitration, arguing the arbitration agreement Gupta signed is valid, enforceable, and applicable to the claims Gupta asserts against LegalZoom in this action.  LegalZoom maintained the arbitration agreement is not procedurally or substantively unconscionable.  LegalZoom submitted a copy of the fully executed arbitration agreement with its motion.

**3.    *Gupta's opposition***

In his declaration in support of his opposition to the motion to compel arbitration, Gupta stated that when he received the employment agreement, he believed he had "no choice" but to sign and initial all the DocuSign prompts therein because he had

6

already signed the offer letter and withdrawn from consideration for other positions. He also stated LegalZoom never informed him that he had "the option to opt out of accepting the arbitration agreement." He added, "If LegalZoom had provided an opt-out form similar to the PAGA Opt-Out form, [he] would have signed it."

In his opposition brief, Gupta contended the arbitration agreement is unenforceable due to its unconscionability.[1] He argued it "is a contract of adhesion obtained in a manner sufficient to establish a high degree of procedural unconscionability." He asserted that when he signed the offer letter, he "was not provided any notice that LegalZoom's 'standard' employment agreement included an agreement to arbitrate employment disputes and waive the constitutional right to jury trial." The offer letter stated only that the standard employment agreement included confidentiality and non-solicitation provisions. He also asserted he did not have "a meaningful opportunity to negotiate the terms of his employment agreement, including opting out of the arbitration agreement," because he had already signed the offer letter; LegalZoom did not indicate the terms of the employment agreement were negotiable; LegalZoom sent the employment agreement through DocuSign, "a service that is synonymous with immediately executing—not negotiating—documents;" and LegalZoom only gave him the option to opt-out of arbitrating PAGA claims, not all claims.

Gupta further asserted the arbitration agreement is procedurally unconscionable because the "language discussing

---

[1] We only set forth here the issues Gupta raised in his opposition that are pertinent to the arguments the parties raise in this appeal.

7

the governing law invokes both California[] and federal law but fails to provide a clear guidance on which would govern in the event of a conflict." He referenced the following provision of the arbitration agreement: "This Arbitration Procedure shall be governed by the Federal Arbitration Act and Arbitration Act of the state where the Employee's primary office is located, California or Texas ('the state in which the Company is located'). This Addendum may be enforced and administered by a court of competent jurisdiction through the filing of a petition to compel arbitration; confirm, vacate or modify an arbitration award; or otherwise pursuant to the Federal Arbitration Act, the arbitration laws of the state in which the Company is located or a combination of the two." He argued that knowing whether the Federal Arbitration Act (FAA) or the California Arbitration Act (CAA) would apply was "important" because they "differ as to the circumstances wherein an award may be vacated," for example. He also noted that the arbitration agreement does not specify which arbitration rules apply.

Gupta indicated in his opposition that he need only show a relatively low degree of substantive unconscionability in the arbitration agreement, given his claim that there was a high degree of procedural unconscionability. He argued there were five substantively unconscionable provisions in the arbitration agreement.

First, Gupta argued that where the employee files an arbitration claim against LegalZoom, the arbitration agreement allows LegalZoom to choose the arbitrator in the event the parties cannot agree on one. The provision provides as follows: "The parties shall choose an arbitrator within 30 days of receipt of the written notice of intent to arbitrate or as soon thereafter as

8

practicable.  If the parties are unable to agree on the selection of an arbitrator within the 30-day period, the party that initiated arbitration shall, within 15 days, request that a JAMS or AAA[2] office located in the city in which the Company is located provide the parties with a list of seven retired judges from the JAMS or AAA employment list of arbitrators.  The parties shall alternatively strike names, with the party initiating the arbitration striking first.  The remaining judge shall serve as the arbitrator."  Gupta maintained that allowing LegalZoom to have the final strike, "unfairly tips the scale in the [*sic*] LegalZoom's favor."

Second, Gupta argued the following provision allows LegalZoom to " 'slip out' of arbitration":  "In the event the foregoing waiver to proceed in arbitration on a class, collective, or representative basis is found to be unenforceable or contrary to law, then any claim brought on such a basis must be filed in a court of competent jurisdiction, and such court, and not an arbitrator, shall be the exclusive forum for such claims."  Gupta claims that in this instance, LegalZoom "preserv[es] its constitutional right to a jury trial while depriving its employees of the same right."

Third, Gupta argued the arbitration agreement "does not provide for adequate access to essential discovery."  The discovery provision states:  "Arbitration is intended to provide a less time-consuming, less expensive, and less complicated means of settling employment-related disputes.  Discovery may be initiated by the

---

[2] These acronyms, which are not defined in the arbitration agreement, refer to the Judicial Arbitration and Mediation Services (JAMS) and the American Arbitration Association (AAA).

9

parties after the selection of the arbitrator and may be initiated without first obtaining permission from the arbitrator. In the event of a dispute regarding discovery either party may ask the arbitrator to determine what discovery is appropriate under the circumstances or adequate for the prosecution or defense of the claims. However, under no circumstances will discovery be permitted that is broader than that which is allowed by the applicable procedural rules of the state in which the Company is located. The arbitrator may issue subpoenas to compel the testimony of third-party witnesses or the production of documents." Gupta asserted that the arbitration agreement violates California law because "it does not establish any minimum requirements for discovery in the arbitration, leaving it wholly to the arbitrator to decide what is adequate."

Fourth, Gupta argued the arbitration agreement impermissibly requires each party to bear its own costs and fees, citing the following provision (section 6, which is titled "**Representation by Legal Counsel**"): "Each side will be permitted to be represented throughout the arbitration proceedings, including at the arbitration hearing, by an attorney of his, her or its choice. Each party shall bear its own costs and expenses." Gupta did *not* reference the following provision included on the same page of the arbitration agreement (section 3, which is titled "**Arbitrator's Fees**"): "To the extent required by law, and only to this extent, the Company shall pay all costs uniquely attributable to arbitration, including the administrative fees and costs of the arbitrator. Otherwise, the Company and the Employees shall split the arbitration fees. Each side shall pay that side's own costs and attorney fees, if any, unless the arbitrator rules otherwise. If the applicable law affords the

10

prevailing party's attorney fees and costs then the arbitrator shall apply the same standards a court would apply to award such fees and costs."

Fifth, Gupta argued the first sentence of a provision in the arbitration agreement relating to confidentiality is overly broad and ambiguous. The provision provides in full: "*All arbitration proceedings are confidential unless applicable law provides otherwise.* The arbitrator shall maintain the confidentiality of the arbitration to the extent the law permits and shall have the authority to make appropriate rulings to safeguard that confidentiality." (Italics added.) Gupta asserted, "An aggrieved employee would not understand the parameters of what 'confidentiality' entails, or the applicable law, thus potentially chilling investigation (e.g., talking to other employees) and also may even prevent other employees from building similar claims."

Gupta contended that severance of terms is not appropriate here because the arbitration agreement is permeated with unconscionability and the court "cannot remove [the] substantive unconscionability without rewriting the whole arbitration agreement," which the law does not permit.

LegalZoom filed a reply brief in support of its motion to compel arbitration, arguing the arbitration agreement is not procedurally or substantively unconscionable. We do not elaborate here on LegalZoom's arguments because we discuss them below in addressing LegalZoom's contentions on appeal.

11

### 4.    *Trial court's ruling*

On September 29, 2023, the trial court held a hearing on LegalZoom's motion to compel arbitration.[3]  After hearing oral argument from the parties, the court adopted its 24-page tentative ruling as its final ruling and denied the motion.  The court declined to enforce the arbitration agreement based on unconscionability.

The court found Gupta "established at least a moderate level of procedural unconscionability" because the arbitration agreement (1) is part of a contract of adhesion; (2) includes ambiguous language concerning the law to be applied (the FAA, the CAA, or a combination of the two); and (3) does not state which arbitration rules apply "to permit the employee to locate and evaluate them."

The court found that the arbitration agreement contains three substantively unconscionable terms.  First, the court concluded that the provision requiring a class action lawsuit to be filed in court if the waiver of class claims in arbitration is found to be unenforceable lacks mutuality.  The court stated that the provision "appear[s] to permit the employer to slip out of the arbitration process in connection with a class or representative action, which would only be brought by the employees, if the waiver proves unenforceable, which exception the employer would have a disproportionate interest in pursuing."  Second, the court concluded that the arbitration agreement's discovery provision is unconscionable because it does not specify the minimum discovery to which the parties are entitled.  Third, the

---

[3] The record before us does not include a reporter's transcript of this hearing.

court concluded that the confidentiality provision "appears broad and vague as to the scope" of Gupta's "confidentiality obligations in connection with the arbitration, so that there is a . . . risk that [he] will be prevented from obtaining information needed to build his case . . . ." The court did not find the other two provisions Gupta cited to be substantively unconscionable (the provision concerning selection of the arbitrator and the cost and fees provision).

The court acknowledged that the arbitration agreement includes a severance clause, and concluded "in theory" that it could sever the "provision concerning class or representative actions." The court decided, however, that it could not sever the discovery and confidentiality provisions without adding to or revising the arbitration agreement, which the law does not permit. The court also stated, "[T]he terms which support a finding of procedural unconscionability, including the language concerning the applicable law to be applied, and the failure to specify the arbitration rules to be applied to permit the employee to locate and evaluate them, cannot be severed, rewritten, clarified or supplied by the court."

## DISCUSSION

LegalZoom contends the trial court erred in declining to enforce the arbitration agreement based on its findings of procedural and substantive unconscionability. As explained below, we agree.

## A.    General Legal Principles and Standard of Review

Both the CAA (Code Civ. Proc., § 1280 et seq.) and the FAA (9 U.S.C. § 1 et seq.) favor enforcement of valid arbitration

13

agreements. (*Armendariz v. Foundation Health Psychcare, Inc.* (2000) 24 Cal.4th 83, 97-98 (*Armendariz*).) Under California and federal law, an arbitration agreement, including one made in an employment contract, "may only be invalidated for the same reasons as other contracts." (*Id.* at p. 98.) Unconscionability is one such reason. (*Id.* at p. 99; *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*).)

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*Kho*); *Ramirez, supra*, 16 Cal.5th at p. 492.)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' [Citation.] Instead, they are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required. [Citations.] A contract's

14

substantive fairness 'must be considered in light of any procedural unconscionability' in its making. [Citation.] 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*Kho, supra*, 8 Cal.5th at pp. 125-126; *Ramirez, supra*, 16 Cal.5th at p. 493.) Gupta bears the burden of proving his unconscionability defense. (*Kho*, at p. 126.)

"Appellate review of an order regarding an arbitration agreement's validity is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law. [Citation.] If a validity ruling rests on the trial court's resolution of evidentiary disputes, substantial evidence review applies to the court's factual findings. [Citation.] The facts here are undisputed; our review is de novo." (*Ramirez, supra*, 16 Cal.5th at p. 493.)

## B. Procedural Unconscionability
### 1. *Contracts of adhesion*
"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] Arbitration contracts imposed as a condition of employment are typically adhesive . . . ." (*Kho, supra*, 8 Cal.5th at p. 126.) While it is far from clear that LegalZoom had superior bargaining power when it hired Gupta, LegalZoom, citing *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1064, acknowledges that there "may be some 'minimal' procedural unconscionability due to the nature" of

15

the standard employment agreement it used, notwithstanding Gupta's executive level status.

"[A]dhesion alone generally indicates only a low degree of procedural unconscionability . . . ." (*Ramirez*, *supra*, 16 Cal.5th at p. 494.)  To establish a higher degree of procedural unconscionability, the party asserting the defense must show oppression or surprise.  (*Kho*, *supra*, 8 Cal.5th at p. 126.)

### 2. Oppression

" 'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by any attorney.' [Citation.]  With respect to *preemployment* arbitration contracts, [our Supreme Court has] observed that 'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.' " (*Kho*, *supra*, 8 Cal.5th at pp. 126-127.)  A "complaining party need not show [he] tried to negotiate standardized contract terms to establish procedural unconscionability." (*Id*. at p. 127.)

There is no evidence that LegalZoom exerted *any* pressure on Gupta to sign the employment agreement (of which the arbitration agreement was a part).  Gupta received the agreement 13 days before his employment was scheduled to (and did) commence.  LegalZoom did not give Gupta a deadline to sign

16

it. He had time to ask questions about the agreement, and he did. Gupta is an educated and experienced executive, who was recruited by LegalZoom and other potential employers. He was able to negotiate a compensation package at LegalZoom that would include equity in the company. Although the employment agreement may be a contract of adhesion, as LegalZoom concedes, the circumstances under which Gupta signed the agreement do not establish oppression, and the trial court did not find otherwise.

### 3. Surprise

Surprise may occur " ' " 'where the allegedly unconscionable provision is hidden within a prolix printed form' " ' " or where the "substance of the agreement . . . is opaque." (*Kho, supra*, 8 Cal.5th at pp. 126 & 128.) Gupta's arguments on appeal invoke the latter but not the former type of "surprise." Gupta does not argue that the arbitration agreement was hidden within the employment agreement or that any of the alleged unconscionable terms were buried within the arbitration agreement. Rather, he asserted below, and the trial court agreed with him, that the arbitration agreement is procedurally unconscionable because it creates ambiguity concerning what substantive law applies, and it does not indicate what rules would apply to the arbitration. On appeal, he also argues that the fees and costs provisions in the arbitration agreement contributed to the procedural unconscionability. We address each of these issues.

#### a. *Arbitration rules*

The arbitration agreement provides: "The parties shall choose an arbitrator within 30 days of receipt of the written notice of intent to arbitrate or as soon thereafter as practicable. If the parties are unable to agree on the selection of an arbitrator

17

within the 30-day period, the party that initiated arbitration shall, within 15 days, request that a JAMS or AAA office located in the city in which the Company is located provide the parties with a list of seven retired judges from the JAMS or AAA employment list of arbitrators." Gupta argues that the failure to specify the applicable arbitration rules contributes to the level of procedural unconscionability here. We disagree.

The arbitration agreement does not reference or attach a particular set of arbitration rules because it affords the parties flexibility to agree on an arbitrator of their mutual choosing, regardless of affiliation with a particular arbitration service. If the parties cannot agree on their own, the party who initiated the arbitration has the authority to choose between JAMS or AAA. Gupta does not argue that either JAMS's or AAA's rules include terms that are substantively unconscionable or disadvantageous to him in some way. On this point, we conceive no material distinction between the present case and those where the arbitration agreement identified the particular arbitration service by name but did not attach the applicable rules. (See, e.g., *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1246 [Baltazar's argument of "a somewhat greater degree of procedural unconscionability" might "have force if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement. But her challenge to the enforcement of the agreement has nothing to do with the AAA rules; her challenge concerns only matters that were clearly delineated in the agreement she signed. Forever 21's failure to attach the AAA rules therefore does not affect our consideration of Baltazar's claims of substantive unconscionability"]; see also *Lange v.*

*Monster Energy Company* (2020) 46 Cal.App.5th 436, 447
["Because none of Lange's substantive unconscionability
arguments here has anything to do with the JAMS rules
applicable to the parties' dispute, we agree that Monster's failure
to attach those rules does not bear on the arbitration agreement's
procedural unconscionability"].)

### b.  *Choice-of-law and fees/costs provisions*

The arbitration agreement provides:  "This Arbitration
Procedure shall be governed by the Federal Arbitration Act and
Arbitration Act of the state where the Employee's primary office
is located, California or Texas ('the state in which the Company is
located').  This Addendum may be enforced and administered by a
court of competent jurisdiction through the filing of a petition to
compel arbitration; confirm, vacate or modify an arbitration
award; or otherwise pursuant to the Federal Arbitration Act, the
arbitration laws of the state in which the Company is located or a
combination of the two."

Gupta argues that this provision "invokes both California
and federal law but fails to provide a clear guidance on which
would govern in the event of a conflict."  Below (and in this
appeal), in an attempt to illustrate a "conflict," he asserted that
the FAA allows for the vacatur of an arbitration award on a
ground not enumerated in the CAA—that "there was evident
partiality" in the arbitrators.  (9 U.S.C. § 10(a)(2).)  He jumped
straight to vacatur without arguing that any conflict or confusion
between application of the CAA and the FAA could affect the
arbitration process itself.  Indeed, he advanced no argument
regarding any conflict or confusion between the CAA and the
FAA bearing on the manner in which a court resolves a motion to
compel arbitration.  He posited no theory that the difference

19

between the application of state arbitration procedure and/or federal arbitration procedure could affect any substantive provision of the arbitration agreement. (Cf. *Ronderos v. USF Reddaway, Inc.* (9th Cir. 2024) 114 F.4th 1080, 1092 ["To determine whether the [arbitration] agreement involves surprise, it is enough to note that the ambiguity of the cost-splitting provision, coupled with the choice-of-law provision [citing both the FAA and the Indiana Uniform Arbitration Act], makes it difficult (even for a lawyer) to figure out whether Ronderos would have to pay half the arbitration costs or not"]; *Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 243 [a delegation clause in an arbitration agreement, coupled with a choice-of-law provision, was procedurally unconscionable because it made it "less likely that an unsophisticated layperson like Pinela would understand how arbitrability questions are to be resolved under" the arbitration agreement].)

Now, for the first time on appeal, Gupta argues that the arbitration agreement contains two conflicting fees and costs provisions, "adding to the surprise" and contributing to the procedural unconscionability, when read in conjunction with the choice-of-law provision.[4] Although we could decline to exercise our discretion to review this new argument raised for the first time here, we decide to address it on the merits because it is a purely legal issue that is related to his other arguments.

The two fees and costs provisions appear on the same page of the arbitration agreement. Section 3, titled "**Arbitrator's Fees**," states: "To the extent required by law, and only to this

---

[4] Below, he argued one of the two fees and costs provisions was substantively unconscionable, an argument the trial court rejected and he has since abandoned.

extent, the Company shall pay all costs uniquely attributable to arbitration, including the administrative fees and costs of the arbitrator.  Otherwise, the Company and the Employees shall split the arbitration fees.  Each side shall pay that side's own costs and attorney fees, if any, unless the arbitrator rules otherwise.  If the applicable law affords the prevailing party's attorney fees and costs then the arbitrator shall apply the same standards a court would apply to award such fees and costs."  Section 6, titled "**Representation by Legal Counsel**," states: "Each side will be permitted to be represented throughout the arbitration proceedings, including at the arbitration hearing, by an attorney of his, her or its choice.  Each party shall bear its own costs and expenses."

We disagree with Gupta's argument that the two fees and costs provisions conflict.  The provisions explain that in some instances the employee will not be required to pay attorney fees and costs—where the employee is entitled to attorney fees and costs by law (statutory fees and costs) and where the costs are unique to arbitration—and in all other instances the employee will bear his or her own fees and costs.

We do agree with Gupta's new argument, however, that section 3 referenced above may be confusing for an employee when read in light of the choice-of-law provision.  The employee may not understand whether he or she should apply California or federal law in determining how much arbitration could cost.  For example, while California law requires the employer to pay costs unique to arbitration (*Armendariz, supra,* 24 Cal.4th at pp. 110-111), the "FAA is silent on the issue of apportioning the costs of arbitration."  (*Ronderos, supra,* 114 F.4th at p. 1092.)

21

We need not decide whether the potential confusion created by these provisions increases the low level of procedural unconscionability attributable to the adhesive contract. Even if the procedural unconscionability were moderate or high, we would conclude the arbitration agreement is enforceable because there is no substantive unconscionability, as we explain below.

## C. Gupta Has Identified No Substantively Unconscionable Terms in the Arbitration Agreement

As explained above, " 'Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*Kho*, *supra*, 8 Cal.5th at p. 125.) It " ' "requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain.' " ' "* (*Baltazar*, *supra*, 62 Cal.4th at p. 1245; *Ramirez*, *supra*, 16 Cal.5th at p. 494.) " ' "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." ' " (*Ramirez*, at p. 495.)

The trial court found that three provisions in the arbitration agreement are substantively unconscionable—the class claims, discovery, and confidentiality provisions. Gupta argues that a fourth provision is as well—the selection of arbitrators. LegalZoom contends none of these provisions are substantively unconscionable. We agree with LegalZoom.

### 1. *Class claims*

The arbitration agreement contains the following provisions regarding waiver of class claims, in pertinent part:

"Except as specifically provided for in this Procedure with respect to PAGA claims, it is the intent of the parties that any

22

dispute covered by this Arbitration Procedure will be arbitrated on an individual basis, and, unless prohibited by law, the parties mutually waive their right to bring, maintain, participate in, or receive money from, any class, collective, or representative proceeding. Further, except for PAGA claims, no dispute between the Employee and the Company may be brought in arbitration on behalf of other employees as a class or collective action or other representative proceeding. Except for PAGA claims, the arbitrator may not preside over any form of a class, collective, or representative proceeding. . . .

"[¶] . . . [¶]

"In the event the foregoing waiver to proceed in arbitration on a class, collective, or representative basis is found to be unenforceable or contrary to law, then any claim brought on such a basis must be filed in a court of competent jurisdiction, and such court, and not an arbitrator, shall be the exclusive forum for such claims."

Gupta does not argue the class-action waiver is substantively unconscionable. Current law precludes this argument. (See *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 [FAA preempts California's unconscionability rule prohibiting class waivers in consumer arbitration agreements].)

He argues that the second paragraph quoted above is substantively unconscionable because it allows LegalZoom to "slip out" of arbitration and go to court if the class-action waiver provision were ever found to be unenforceable. Gupta asserts "LegalZoom carves out an exception to proceeding in arbitration" and "preserv[es] its constitutional right to a jury trial while depriving its employees of the same right." According to Gupta,

23

the provision is unlawful because it lacks mutuality. The argument is without merit.

Gupta, who is currently trying to litigate his (individual) employment-related claims in court rather than arbitration, and who says he would have opted out of arbitration entirely if he could have, is also asserting that a provision that would require him to litigate class claims (were he to bring any) in court rather than arbitration is substantively unconscionable. He cites no authority supporting this proposition.

The case he does cite, *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, is inapposite. There, an arbitration clause requiring an employee to arbitrate all disputes arising out of the employment relationship, "explicitly exclude[d]" from the arbitration clause's scope "all claims that the employer would be likely to assert against the employee," such as breach of a covenant to protect intellectual property. (*Id.* at p. 665.) The Court of Appeal concluded the provision was substantively unconscionable because it lacked mutuality and "basic fairness." (*Id.* at p. 666.) Here, the agreement would allow an employee to bring class claims in court if the class waiver were found to be unenforceable; it does *not* carve out claims that the employer may bring in court, but not the employee. Gupta does not explain how this provision is overly harsh or unfair to the employee.

California courts have protected parties from unfair agreements that "require 'one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences.' " (*Ramirez, supra*, 16 Cal.5th at p. 495.) We have no cause to strike down this provision that would allow an employee to litigate claims in court.

### 2. *Discovery*

The discovery provision in the arbitration agreement provides:

"Arbitration is intended to provide a less time-consuming, less expensive, and less complicated means of settling employment-related disputes. Discovery may be initiated by the parties after the selection of the arbitrator and may be initiated without first obtaining permission from the arbitrator. In the event of a dispute regarding discovery either party may ask the arbitrator to determine what discovery is appropriate under the circumstances or adequate for the prosecution or defense of the claims. However, under no circumstances will discovery be permitted that is broader than that which is allowed by the applicable procedural rules of the state in which the Company is located. The arbitrator may issue subpoenas to compel the testimony of third-party witnesses or the production of documents."

*Armendariz* explained that employees "are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) . . . ." (*Armendariz, supra,* 24 Cal.4th at p. 106.) Gupta argues that the provision here "fails the *Armendariz* requirement of providing for adequate discovery" because "it does not establish any minimum requirements for discovery in the arbitration." We note that "the *Armendariz* agreement contained no discovery provision at all." (*Ramirez, supra,* 16 Cal.5th at p. 504.) We disagree that the discovery provision in the arbitration agreement before us is substantively unconscionable.

The provision provides for discovery as broad as California law allows, subject only to the arbitrator's rulings. The parties may initiate whatever discovery they choose without first seeking approval from the arbitrator. In the event of a dispute between the parties, the arbitrator determines what discovery is appropriate. The provision expressly authorizes the arbitrator to issue subpoenas.

Gupta attempts to distinguish *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 982-985, a case in which the Court of Appeal concluded a discovery provision in an arbitration agreement was not substantively unconscionable. The provision there provided: " 'Each party shall have the right to take the deposition of one individual and any expert witness designated by the other party. Each party also shall have the right to make requests for production of documents to any party. The subpoena right specified below in Paragraph 4["[e]ach party shall have the right to subpoena witnesses and documents for the arbitration"] shall be applicable to discovery pursuant to this paragraph. Additional discovery may be had where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of need.' " (*Id*. at p. 982.) The appellate court concluded the provision's limitations on discovery were permissible and the provision properly afforded the arbitrator "broad discretion" to "order the discovery needed to sufficiently litigate the parties' claims." (*Id*. at p. 984.) The court noted that "when determining the validity of a discovery provision," a court must "assume that the arbitrator will operate in a reasonable manner in conformity with the law." (*Ibid*.)

Gupta states, "In *Dotson*, the arbitration agreement provided for at least a minimum of discovery: deposition of one

26

individual and one expert witness plus document requests. The agreement at issue here, however, specifies no discovery methods at all." The provision here places no limitations whatsoever on the " 'full panoply of discovery provided' in the Code of Civil Procedure." (*Ramirez*, *supra*, 16 Cal.5th at p. 504.) Gupta cites no authority requiring an arbitration agreement to specify the various methods by which a party may conduct discovery, and we are aware of none.

As our Supreme Court recently reaffirmed: "*Armendariz* stands for the principle that an arbitration agreement required as a condition of employment must generally permit employees sufficient discovery to adequately arbitrate any statutory claims. The scope of what discovery is sufficient is determined by the arbitrator." (*Ramirez*, *supra*, 16 Cal.5th at p. 505.) The discovery provision here satisfies *Armendariz'*s requirements.

### 3.     *Confidentiality*

The arbitration agreement contains the following confidentiality provision, under the heading, "**Scope of Arbitrator's Authority**,"

"All arbitration proceedings are confidential unless applicable law provides otherwise. The arbitrator shall maintain the confidentiality of the arbitration to the extent the law permits and shall have the authority to make appropriate rulings to safeguard that confidentiality." Gupta maintains: "This provision has a one-side effect which favors LegalZoom. An aggrieved employee would not understand the parameters of what 'confidentiality' entails, or the applicable law, thus potentially chilling investigation (e.g. talking to other employees) or even preventing other employees from building similar claims."

27

The provision at issue is in a three-paragraph section of the arbitration agreement discussing the "arbitrator's authority." The provision itself sets forth the arbitrator's obligations to maintain and safeguard the confidentiality of the arbitration. The provision is placed in the arbitration agreement immediately above the discovery provision, which, as explained above, allows the parties to conduct broad discovery, including third-party discovery. Reading the provision in context, we cannot conclude that it potentially chills investigation or "building" of claims.

While provisions that bar the *parties* from disclosing the existence of the arbitration may be substantively unconscionable (see *Haydon v. Elegance at Dublin* (2023) 97 Cal.App.5th 1280, 1290), Gupta cites no case holding that a provision similar to the one here is substantively unconscionable, and we are aware of none. In a case on which Gupta relies, the confidentiality provision stated: "Except as may be necessary to enter judgment upon the award or to the extent required by applicable law, all claims, defenses and proceedings (including, without limiting the generality of the foregoing, the existence of a controversy and the fact that there is a mediation or an arbitration proceeding) shall be treated in a confidential manner by the mediator, the Arbitrator, the *parties and their counsel*, each of their agents, and employees and all others acting on behalf of or in concert with them. Without limiting the generality of the foregoing, no one shall divulge to any third party or person not directly involved in the mediation or arbitration the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration, except as may be necessary to enter judgment upon the Arbitrator's award as required by applicable law." (*Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066, 1071, overruled on another ground in

28

*Kilgore v. KeyBank* (9th Cir. 2012) 673 F.3d 947, 960, italics added.)  The provision in *Davis* expressly prevented an employee from disclosing the existence of the arbitration, and the appellate court concluded it was substantively unconscionable.  (*Id.* at pp. 1078-1079.)  The provision here does no such thing.  It is not substantively unconscionable.

### 4. *Selection of arbitrator*

The procedure for selecting the arbitrator is set forth in the arbitration agreement as follows:

"The parties shall choose an arbitrator within 30 days of receipt of the written notice of intent to arbitrate or as soon thereafter as practicable.  If the parties are unable to agree on the selection of an arbitrator within the 30-day period, the party that initiated arbitration shall, within 15 days, request that a JAMS or AAA office located in the city in which the Company is located provide the parties with a list of seven retired judges from the JAMS or AAA employment list of arbitrators.  The parties shall alternatively strike names, with the party initiating the arbitration striking first.  The remaining judge shall serve as the arbitrator."

The trial court did not find this provision to be substantively unconscionable.  Gupta contends that it is, arguing: "Where an employee initiates the 'Arbitration Procedure," LegalZoom would always get the last strike from the list of retired judges provided by its local AAA or JAMS, effectively choosing the retired judge arbitrator for all employment disputes raised by the employee.  [Citation to the record.]  Considering the broad discretion given to the arbitrator by the terms of the agreement and the 'repeat player' effect, allowing for LegalZoom

to choose the arbitrator unfairly tips the scale in LegalZoom's favor."

This selection procedure—which only comes into play if the parties cannot independently agree on an arbitrator—is not overly harsh, one-sided, or unfair.  The arbitration service provides the names of the seven retired judges; the parties do not select them.  From this list, the party initiating the arbitration has the first, third, and fifth strikes; and the respondent has the second, fourth, and sixth strikes, leaving the remaining retired judge as the arbitrator.  Arguably, the last two remaining retired judges will be the most acceptable of the seven from the claimant's perspective.  If LegalZoom were to initiate arbitration proceedings against Gupta, Gupta would have the choice between the remaining two candidates.  This procedure is fair and mutual.

Because we conclude there is no substantive unconscionability in the arbitration agreement, the agreement must be enforced.  Accordingly, we reverse the order denying LegalZoom's motion to compel arbitration and remand the matter for further proceedings consistent with this opinion.

## DISPOSITION

The order denying LegalZoom's motion to compel arbitration is reversed.  On remand, the trial court is directed to

grant the motion to compel arbitration and stay the case. LegalZoom is entitled to recover costs on appeal.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.